## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| JASON J. SMITH-BEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 5:09-0746** |
| | ) | |
| SCOTTY ROSE, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 20.), filed on November 22, 2010. The Court notified Plaintiff pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by Defendants in moving to dismiss. (Document No. 22.) Plaintiff has filed a Response to Defendants' Motion. (Document No. 30.) Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Defendants' Motion to Dismiss, or in the Alternative Motion for Summary Judgment (Document No. 20.).

### PROCEDURAL HISTORY

On June 30, 2009, Plaintiff, an inmate at FCI Beckley, located in Beckley, West Virginia, and acting *pro se*,[1] filed his Complaint in this matter claiming entitlement to relief pursuant to

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

<u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619(1971). Plaintiff names the following as Defendants: (1) Scotty Rose; (2) Kevin Thompson; and (3) Federal Bureau of Prisons. (Document No. 1.) Plaintiff alleges that Defendants failed to provide adequate medical care concerning the treatment of a cyst located on his neck. (<u>Id.</u>) Plaintiff asserts that on August 17, 2006, and February 8, 2007, Defendant Rose "performed two unsuccessful surgeries to remove a cyst from the back of Plaintiff's neck, while performing the surgeries as a non-licensed physician." (<u>Id.</u>, p. 3.) Plaintiff claims that "surgery by a non-physician during non-emergency situations shocks the conscience of the court, thereby establishing an Eighth Amendment violation." (<u>Id.</u>, p. 4.) Plaintiff alleges that "neither surgery removed the infected cyst from his neck." (<u>Id.</u>) Next, Plaintiff alleges that beginning "[o]n December 16, 2008, until the present, Kevin Thompson has delayed medical treatment for Plaintiff's surgery to remove the infected cyst from the back of his neck, by ignoring the outside physician's recommendation for surgical removal of the cyst." (<u>Id.</u>) Plaintiff claims that Dr. Whyte examined him on January 22, 2009, and advised Defendant Thompson that surgery was recommended to treat Plaintiff's condition. (<u>Id.</u>) Plaintiff complains that Defendant Thompson "failed to follow-up on Dr. Whyte's recommendation because a total of six months has passed and the Plaintiff has not received the scheduled surgery." (<u>Id.</u>) Plaintiff asserts that Defendants' actions have caused him "continuous suffering." (<u>Id.</u>) Plaintiff further alleges that he has exhausted all of his available administrative remedies. (<u>Id.</u>, p. 5.) Accordingly, Plaintiff requests "monetary and injunctive relief." (<u>Id.</u>)

By Order entered on September 20, 2010, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees. (Document No. 12.) On November 22, 2010, Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 20)

and Memorandum in Support (Document No. 19-1). In support, Defendants argue as follows: (1) "Plaintiff's claims are in part barred by the statute of limitations" (Document No. 19-1, pp. 6 - 8.); (2) "Plaintiff fails to state a claim upon which relief may be granted" (Id., pp. 8 - 16.); (3) "Defendants are entitled to qualified immunity" (Id., pp. 16 - 19.); (4) "There is a lack of personal involvement on the part of Defendant Thompson" (Id., pp. 19 - 22.); and (5) "Plaintiff's request for injunctive relief must be dismissed" (Id., pp. 22 - 23.).

As Exhibits, Defendants attach the following: (1) The Declaration of Dominic McLain, D.O., (Document No. 20-1, pp. 1 - 5.); (2) A copy of Plaintiff's medical records (Id., pp. 6 - 79 and Document No. 20-2, pp. 1 - 31.); (3) The Declaration of Scotty Rose (Document No. 20-2, pp. 32 - 33.); and (4) The Declaration of Kevin Thompson (Id., pp. 34 - 35.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on November 23, 2010, advising him of the right to file a response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 22.)

On February 8, 2011, Plaintiff filed his Response to Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. (Document No. 30.) Plaintiff contends that Defendant Rose, who is a non-licensed physician, acted with deliberate indifference by attempting to remove the abscess from his neck on two occasions. (Id., p. 3.) Plaintiff states that Defendant Rose's "actions have caused the plaintiff continuous suffering amounting to cruel and unusual punishment as a result of such abscess still festering on the back of his neck, after two attempts by a non-licensed physician to remove it." (Id.) Plaintiff argues that "[i]t's unconstitutional for unlicensed doctors, untrained inmates, and untrained pharmacists to administer medical care." (Id., p. 4.) Next, Plaintiff claims that "his medical need is serious [because] it was diagnosed by a

physician (Dr. Whyte) as mandating treatment and so obvious even a lay person would recognize the necessity for a doctor's attention." (Id.) Third, Plaintiff argues that Defendants are not entitled to qualified immunity because "they had a duty and obligation to provide medical care to plaintiff." (Id.) Plaintiff explains that Defendants violated "clearly established law" by "depriving plaintiff of adequate medical care resulting in plaintiff sustaining bodily injury and unnecessary pain and suffering." (Id.) Fourth, Plaintiff asserts that Defendant Thompson "knowingly and deliberately delayed medical treatment of surgery to remove the infectious painful abscess from the back of [Plaintiff's] neck by ignoring outside physician's recommendation for surgical removal of such abscess." (Id., p. 5.) Plaintiff contends that Defendant "Thompson failed to follow up on Dr. Whyte's recommendation because a total of six months passed and the plaintiff did not receive the scheduled surgery as indicated by the Regional Director's written response dated February 17, 2009." (Id., p. 6.) Plaintiff alleges that as "administrator of the prison hospital, Mr. Thompson bears responsibility for insuring that prison inmates receive adequate medical care." (Id.) Fifth, Plaintiff argues that he "filed his complaint well within the two-year statute of limitations." (Id., pp. 7 - 8.) Specifically, Plaintiff states that he was denied his "necessary corrective surgery by the utilization review committee" on September 11, 2007, and filed his complaint on June 30, 2009. (Id., p. 7.) Finally, Plaintiff contends that his request for injunctive relief is not moot because "the case or controversy is live and on going, the plaintiff did suffer, and was threatened with an actual injury traceable to the defendants." (Id.)

In support, Plaintiff attaches the following as Exhibits: (1) A copy of his medical records (Document No. 30-1.); (2) The Declaration of Richard Ramos (Document No. 30-2, pp. 2 - 3.); (3) The Declaration of Julius Evans (Id., pp. 5 - 6.); (4) The Declaration of Steve Edmonds (Id., pp. 8 - 9.); and (5) Plaintiff's Declaration (Id., pp. 11 - 13.).

4

## FACTUAL HISTORY

Based upon a review of the record it appears that Plaintiff arrived at FCI Beckley on April 6, 1998. Plaintiff complains that Defendants failed to provide him with adequate medical treatment by improperly delaying his referral to an outside physician for the removal of a cyst. On August 17, 2006, Plaintiff reported to sick-call complaining that "I have a knot on the back of my head that I would like removed because it flares up and gets sore." (Document No. 20-1, p. 21.) Plaintiff was evaluated the same day by Defendant Rose, a Physician Assistant. (Id.) Under the direction of Dr. Edwards, Defendant Rose anesthetized the area with Lidocaine, made a small incision, expressed a sebaceous cyst from the area, and closed the laceration with sutures. (Id., pp. 21 - 22, and 54.) Defendant Rose applied antibiotic ointment and dressed the wound. (Id., pp. 21 - 22.) Plaintiff signed a form requesting the procedure and acknowledging that he understood the risks and expected results. (Id., p. 54.)

On January 8, 2007, Plaintiff reported to sick-call stating that "I have a cyst on the back of my neck that is draining and causing pain. It never stopped from the last time I had it removed." (Id., p. 19.) Defendant Rose examined Plaintiff on January 10, 2007. (Id., p. 20.) Defendant Rose noted the following: "Inmate complains of cyst on post neck that has returned. He requests to have it removed again. He states that it gets sore and bothers him. Rates pain on scale of 10, a 3." (Id.) Defendant Rose noted that the cyst was suspected to be an epidermal cyst. (Id.) Plaintiff was educated concerning the condition and treatment plan. (Id.) Plaintiff stated that he understood and agreed to the treatment plan. (Id.)

On February 8, 2007, Plaintiff again requested the removal of the cyst. (Id., p. 18.) On a scale of 1 to 10, Plaintiff rated his pain at 4 to 5. (Id.) At the direction of Dr. Edwards and Dr. McLain,

Defendant Rose removed the cyst. (<u>Id.</u>, pp. 18 and 53.) Plaintiff signed a form requesting the procedure and acknowledging that he understood the risks and expected results. (<u>Id.</u>) The cyst was sent to pathology for evaluation. (<u>Id.</u>, p. 18.) The pathology report indicated the cyst was an epidermal inclusion cyst. (<u>Id.</u>, pp. 40 and 52.)

Plaintiff reported to sick-call on August 3, 2007, stating that the cyst had returned. (<u>Id.</u>, p. 15.) Plaintiff complained that "it started out as a small knot beneath the skin and has progressively gotten larger." (<u>Id.</u>, p. 16.) Plaintiff rated his pain as a 4 to 5 on a scale to 10. (<u>Id.</u>) Plaintiff was examined by Defendant Rose, who determined that the cyst was possibly infected. (<u>Id.</u>) Defendant Rose prescribed antibiotics and instructed Plaintiff to follow-up with Health Services upon completion of the antibiotics. (<u>Id.</u>) Plaintiff reported to sick-call on August 20, 2007, for the purposes of scheduling his follow-up appointment. (<u>Id.</u>, p. 13.) Plaintiff was examined by Defendant Rose on August 23, 2007. (<u>Id.</u>, p. 14.) Plaintiff rated his pain as a 2 to 3 on a scale to 10. Defendant Rose noted that the "abscess is draining on post neck, culture done today and given to lab." (<u>Id.</u>, p. 14 and 39.) Defendant Rose continued the prescription of antibiotics. (<u>Id.</u>, p. 14.) On August 30, 2007, Plaintiff returned to sick-call for the scheduling of a follow-up appointment. (<u>Id.</u>, p. 11.) Plaintiff was evaluated on September 4, 2007, by Defendant Rose. (<u>Id.</u>, p. 12.) Plaintiff rated his pain as a 6 on a scale to 10 and requested the removal of the cyst. (<u>Id.</u>) Defendant Rose examined Plaintiff and found that the area was no longer draining, but Plaintiff "continues to have an area the diameter of a nickel that is mobile on posterior neck, slightly tender to palpation." (<u>Id.</u>) Defendant Rose noted that the "culture was negative for any growth." (<u>Id.</u>) Defendant Rose completed a Consultation Sheet requesting the removal of the recurrent epidermal cyst. (<u>Id.</u>, p. 51.) On September 11, 2007, the Utilization Review Committee ["URC"] denied Plaintiff's request for the

removal of the cyst. (Id.) By administrative note dated September 19, 2007, Defendant Rose indicated that he advised Plaintiff that the removal of the cyst was considered an elective cosmetic procedure and his request had been denied by the URC. (Document No. 20-1, p. 8.).

On May 20, 2008, Plaintiff reported to sick-call complaining that "I have a cyst reappear on the back of my neck." (Document No. 20-1, p. 9.) Defendant Rose examined Plaintiff on May 29, 2008, noting that Plaintiff had a "history of epidermal cyst and requests to have it removed." (Id., p. 10.) Plaintiff denied any pain. (Id.) Defendant Rose determined that the cyst would be monitored. (Id.) Plaintiff was transferred to another facility on July 10, 2008. (Id., p. 7.)

Plaintiff returned to FCI Beckley on November 7, 2008, and was evaluated on intake. (Document No. 20-2, pp. 1 - 4, pp. 20 - 23.) On November 21, 2008, Plaintiff reported to Health Services  requesting the removal cyst on his neck because it "drains and sometimes hurts." (Id., p. 18.) On a scale to ten, Plaintiff rated his pain as a "5 to 6." (Id.) Defendant Rose examined Plaintiff noting as follows: "Small quarter sized mobile mass on posterior neck. No erythema. Nontender. No drainage." (Id., p. 19.) Defendant Rose advised Plaintiff to "follow-up at sick-call as needed." (Id.) Plaintiff was evaluated again on December 4, 2008, and Dr. McLain requested consultation with a general surgeon. (Document No. 20-2, pp. 28 - 29 and Document No. 30-1, pp. 92 - 93.) On December 9, 2008, the URC approved Dr. McLain request for a consultation with a general surgeon. (Document No. 20-1, p. 66.)

On January 22, 2009, Plaintiff was examined by Dr. Brian R. Whyte of Beckley Vascular Associates. (Id., pp. 70 - 72.) Dr. Whyte recommended the excision of the cyst. (Id.) On May 6, 2009, Plaintiff was evaluated in Health Service and inquired as to when "he is going out to get the cyst on his neck taken care of." (Document No. 30-1, pp. 87 - 88.) Dr. Edwards prepared a

Consultation Request concerning the excision of the cyst. (Document No. 20-2, pp. 30 - 31.) On June 30, 2009, the URC approved Plaintiff's request for the surgical removal of the cyst. (Document No. 20-1, p. 65.) On July 29, 2009, Dr. Whyte excised the cyst. (Document No. 20-1, pp. 59 - 63.)

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims,

the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C.

9

§ 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law.[2] The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

A.      **Federal Bureau of Prisons as a Defendant.**

In his Complaint, Plaintiff names the Federal Bureau of Prisons as a Defendant. (Document No. 1.) Federal inmates may file claims of personal liability against individual prison officials for

---

[2] Inmates may file claims of liability against the United States under the FTCA but may not assert claims of personal liability against prison officials for violations of their constitutional rights. *Carlson v. Green*, 446 U.S. at 21-23, 100 S.Ct. at 1472 -74. By contrast, under *Bivens* inmates may assert claims of personal liability against individual prison officials for violations of their constitutional rights but may not assert claims against the government or prison officials in their official capacities. The Supreme Court held in *Carlson*, 446 U.S. at 18 - 21, 100 S.Ct. at 1471-72, that an inmate could pursue a *Bivens* action independent of a FTCA action. The Court found that Congress did not intend to pre-empt a *Bivens* remedy when it enacted the FTCA. *Id.* The Court noted that the legislative history of the FTCA "made it crystal clear that Congress views FTCA and *Bivens* as parallel, complementary causes of action." *Id.*, 446 U.S. at 19 - 20, 100 S.Ct. at 1471 -72. Relying upon *Carlson*, the Fourth Circuit found that the availability of relief under the FTCA does not automatically foreclose a *Bivens* action. *Dunbar Corp v. Lindsey*, 905 F.2d 754, 762 (4th Cir. 1990). The Court pointed out other distinctions between FTCA and *Bivens* actions in *Dunbar Corp.*: (1) only compensatory damages are available in FTCA actions, whereas compensatory and punitive damages are available under *Bivens* and (2) FTCA claims must be tried to the Court, whereas *Bivens* claims may be tried to a jury. *Id.*

violations of their constitutional and civil rights pursuant to <u>Bivens</u>, but may not assert claims against the government or prison officials in their official capacities. The Federal Bureau of Prisons is not a "person" as required by <u>Bivens</u>. As stated above, federal agencies are not proper defendants under <u>Bivens</u>. Therefore, the undersigned concludes that the Federal Bureau of Prisons should be dismissed as a defendant.

**B.     Request for Injunctive Relief.**

Under Article III, Section 2 of the Constitution of the United States, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." <u>Spencer v. Kemna</u>, 523 U.S. 1, 7, 118 S.Ct. 978, 983, 140 L.Ed.2d 43 (1998)(<u>quoting</u> <u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 477, 110 S.Ct. 1249, 1253, 108 L.Ed.2d 400 (1990)). This case or controversy requirement means that plaintiff must continue to have a personal stake in the outcome of the civil action when the Complaint is filed and when the case is decided. <u>Id.</u> If at any point in the proceeding there is no actual controversy, the case must be dismissed as moot. <u>Id.</u> In his Complaint, Plaintiff requests "monetary and injunctive relief." As injunctive relief, Plaintiff requests the Court order the BOP to immediately provide for the surgical removal of the cyst located on Plaintiff's neck. The medical records reveal that the cyst was removed on July 29, 2009. Accordingly, Plaintiff's request for injunctive relief should be denied as moot.

**C.     Statute of Limitations.**

A Plaintiff must file a <u>Bivens</u> action within the prescribed time period. Because there is no federally prescribed statute of limitation, Courts look to and apply their respective state's statutes of limitation. <u>See</u> <u>Wilson v. Garcia</u>, 471 U.S. 261, 266-69, 105 S.Ct. 1938, 1942-43, 85 L.Ed.2d 254 (1985). Under West Virginia law, the applicable period of limitation upon Plaintiff's right to file this

11

civil action was two years from the time the cause of action accrued. See W.Va. Code § 55-2-12(b).[3] Although the limitation period is borrowed from state law, the question of when a cause of action accrues is answered according to federal law. See Brooks v. City of Winston-Salem, NC, 85 F.3d 178, 181 (4th Cir. 1996). Under federal law, a cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, MD House of Corr., 64 F.3d 951, 955 (4th Cir. 1995)(en banc), cert. denied, 516 U.S. 1177, 116 S.Ct. 1273, 134 L.Ed.2d 219 (1996)(citing United States v. Kubrick, 444 U.S. 111, 122-24, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)). "Accrual of a claim does not 'await awareness by the plaintiff that his injury was negligently inflicted.'" Nasim, 64 F.3d at 955 (quoting, Childers Oil Co., Inc. v. Exxon Corp., 960 F.2d 1265, 1272 (4th Cir. 1992)). Accordingly, for a Bivens action, "a cause of action accrues either when the plaintiff has knowledge of his claim or when he is put on notice -- e.g., by the knowledge of the fact of injury and who caused it -- to make reasonable inquiry and that inquiry would reveal the existence of a colorable claim." Nasim, 64 F.3d at 955. To determine when a plaintiff possessed knowledge of his injury, the Court "may look to the common-law cause of action most closely analogous to the constitutional right at stake as an 'appropriate starting point.'" Brooks, 85 F.3d at 181 (citations omitted).

_____

[3] West Virginia Code § 55-2-12 provides as follows:

Every personal action for which no limitation is otherwise prescribed shall be brought: (a) Within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be for any other matter of such nature that, in case a party die, it could not have been brought at common law by or against his personal representative.

Federal Courts also apply the forum state's law regarding tolling, including equitable tolling, when not inconsistent with federal law. Hardin v. Straub, 490 U.S. 536, 537-39, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). In Irwin v. Dep't of Veteran's Affairs, 498 U.S. 89, 97, 111 S.Ct. 453, 458, 112 L.Ed.2d 435 (1990), the United States Supreme Court recognized that statutes of limitations in actions against the government are subject to a rebuttable presumption of equitable tolling. The Irwin Court stated that equitable tolling should apply in cases "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Id. Federal Courts have held that because the Prison Litigation Reform Act requires a prisoner to exhaust administrative remedies, the prisoner is entitled to equitable tolling of the applicable limitations period while he exhaust the remedies. See Clifford v. Gibbs, 298 F.3d 328, 333 (5th Cir. 2002); Brown v. Morgan, 209 F.3d 595 (6th Cir. 2000); Howard v. Mendez, 304 F.Supp.2d 632, 638 (M.D.Pa. 2004)(a Bivens case); Aguirre-Castillo v. United States, 2004 WL 594105 (N.D.Tex.)(a Bivens/FTCA case); Lopez v. S.C.D.C., 2007 WL 2021875 (D.S.C.)

In the Motion to Dismiss, Defendants argue that Plaintiff's Bivens claim against Defendant Rose should be dismissed as untimely. (Document No. 19-1, pp. 6 - 8.) In his Complaint, Plaintiff contends that Defendant Rose was unqualified and therefore acted with deliberate indifference in attempting on two occasions to surgically remove the cyst from Plaintiff's neck. (Document No. 1.) Plaintiff argues that "[i]t's unconstitutional for unlicensed doctors, untrained inmates, and untrained pharmacists to administer medical care." (Document No. 30, p. 4.) First, the undersigned will consider Plaintiff's allegation that Defendant Rose acted with deliberate indifference in his first attempt to remove the cyst. The medical records reveal that Defendant Rose first removed the cyst

13

from Plaintiff's neck on August 17, 2006. The Court, therefore, concludes that Plaintiff's cause of action accrued no later than August 17, 2006. Applying the West Virginia two-year statute of limitation, together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action expired on August 17, 2008, two-years from the date Plaintiff was aware that Defendant Rose, a Physician Assistant, performed a surgical procedure removing the cyst. Plaintiff filed his instant Complaint on June 30, 2009. Accordingly, the two-year statute of limitations has run as to Plaintiff's above claim.

Next, the undersigned will consider Plaintiff's allegation that Defendant Rose acted with deliberate indifference in his second attempt to remove the cyst. The medical records reveal that Defendant Rose removed the cyst from Plaintiff's neck on February 8, 2007. The Court, therefore, concludes that Plaintiff's cause of action accrued no later than February 8, 2007.[4] Applying the West Virginia two-year statute of limitation, together with the federal standard of accrual, the undersigned finds that Plaintiff's cause of action expired on February 8, 2009, two-years from the date Plaintiff was aware that Defendant Rose, a Physician Assistant, performed a surgical procedure removing the

---

[4] Plaintiff appears to contend that the statute limitations was tolled because his was exhausting his administrative remedies. For *Bivens* purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." *Dale v. Lappin*, 376 F.3d at 655 (internal citations omitted); *also see Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). Pursuant to 28 C.F.R. § 542.14(a), an inmate is required to submit a form "Administrative Remedy Request" within 20 days after the circumstances occurred which are the submit of the inmate's complaints. The record is void of any evidence that Plaintiff properly filed an Administrative Remedy Request within 20 days after Defendant Rose removed the cysts (August 17, 2006, and February 8, 2007). The record contains only evidence that Plaintiff began the administrative remedy process on December 15, 2008, regarding his request for corrective surgery by an outside physician. Accordingly, Plaintiff's claim that the statute of limitations was tolled is without merit.

cyst. Plaintiff filed his instant Complaint on June 30, 2009. Accordingly, the two-year statute of limitations has run as to Plaintiff's claim.

**D.     No evidence of deliberate indifference.**

Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), *rev'd on other grounds*, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). See also Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994)(Supreme Court noted that Eighth Amendment imposes certain duties upon prison officials to "ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'"), quoting Hudson v. Palmer, 468 U.S. 517, 526 - 27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984)); Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)(Court held that only those conditions depriving inmates of "the minimal civilized measure of life's necessities" are sufficiently grave to form the basis of an Eighth Amendment violation). Sentenced prisoners are therefore constitutionally guaranteed adequate medical care under the Eighth Amendment.

To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege and prove (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct.

2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.") A medical need serious enough to give rise to an Eighth Amendment claim involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment causes continuous severe pain. The Fourth Circuit stated the applicable standard in Miltier v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990), as follows:

> To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness. * * * Deliberate indifference may be demonstrated by either actual intent or reckless disregard. * * * A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position. * * * Nevertheless, mere negligence or malpractice does not violate the eighth amendment. (Citations omitted)

See also Sosebee v. Murphy, 797 F.2d 179, 183 (4th Cir. 1986)(Facts indicating that guards were aware that inmate's condition had worsened and was life-threatening and intentionally ignored the situation and refused to seek medical assistance provided a reasonable basis for finding deliberate indifference to inmate's medical needs.); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928, 100 S.Ct. 1865, 64 L.Ed.2d 281 (1980)(Pretrial detainee's allegations of delay in treatment of his broken arm indicated a reasonable basis for inferring deliberate indifference to his serious medical needs.); Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975)(Summary judgment for

16

defendants affirmed where claim that inmate received constitutionally inadequate medical treatment involved a question of medical judgment not subject to judicial review.) Therefore, Plaintiff must first allege and eventually establish a "sufficiently serious" deprivation of adequate medical care and resulting "serious or significant physical or mental injury" in order to maintain and prevail upon his Eighth Amendment claim. Second, to establish the subjective component of deliberate indifference, Plaintiff must allege and prove each defendant's consciousness of the risk of harm to him. See Farmer, *supra*, 511 U.S. at 840, 114 S.Ct. at 1980. In particular, Plaintiff must establish that each Defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, *supra*, 511 U.S. at 837, 114 S.Ct. at 1979. Plaintiff in this case must therefore allege and establish that each Defendant was aware that he was receiving constitutionally inadequate medical care and disregarded the serious physical consequences.

### (i) *Defendant Rose:*

Plaintiff alleges that Defendant Rose acted with deliberate indifference in delaying his transfer to an outside physician for the removal of the cyst. Defendant Rose contends that Plaintiff suffered from an epidermal inclusion cyst, which is not a serious medical condition for purposes of the Eighth Amendment.[5] (Document No. 19-2, p. 10.) In Response, Plaintiff argues that the epidermal cyst was a serious medical condition because he was in continuous pain. (Document No. 30, pp. 3 - 4.) For purposes of an Eighth Amendment claim, a medical need is serious if it involves a condition which places an inmate at substantial risk of serious harm, usually loss of life or

---

[5] An epidermal inclusion cyst is a blocked gland. (Document No. 20-1, p. 3.)

17

permanent disability, or a condition for which lack of treatment causes continuous severe pain. The undersigned disagrees with Defendant's conclusion that a cyst is not an objectively serious medical condition. See Gutierrez v. Peters, 111 F.3d 1364, 1373-74 (7th Cir. 1997)(large cyst that had become infected was a serious medical condition); also see Dennis v. Liberty, 2009 WL 5184415, * 2 (D.Me. Dec. 22, 2009)(finding that "it is at least plausible that [a cyst] could be a serious condition");  Arce v. Banks, 913 F. Supp. 307, 309-10 (S.D.N.Y. 1996)(small cyst on forehead not sufficiently serious). Plaintiff alleges that the cyst was recurrent, became infected, and caused continuous pain. Accordingly, the undersigned will assume that Plaintiff's medical condition was serious enough to give rise to an Eighth Amendment claim.

Next, the undersigned will consider whether Defendant Rose acted with deliberate indifference to Plaintiff's health and safety under a subjective standard. To satisfy the subjective component, Plaintiff must allege each Defendant's consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff contends that Defendant Rose acted with deliberate indifference is failing to refer him to an outside physician after the cyst returned for the second time. According to the medical records, Plaintiff's cyst returned the second time on August 3, 2007. (Document No. 20-1, p. 15.) Defendant Rose examined Plaintiff and determined that the cyst was possibly infected. (Id., p. 16.) Defendant Rose prescribed antibiotics and instructed follow-up upon completion of the antibiotics. (Id.) Approximately three weeks later, on August 23, 2007, Defendant Rose evaluated Plaintiff for a follow-up appointment noting that the cyst was draining. (Id., p. 14.) Defendant Rose sent a culture to the lab and instructed Plaintiff to continue the prescription of antibiotics. (Id.) Plaintiff indicated that he was having less pain. (Id.) On September 4, 2007, Defendant Rose examined Plaintiff noting that the cyst was no longer draining and the

18

culture was negative. (Id., p. 12.) Plaintiff requested the removal of the cyst and Defendant Rose completed a Consultation Sheet requesting the removal of the recurrent epidermal cyst. (Id., pp. 12 and 51.) The URC denied the request on September 11, 2007. (Id., p. 51.) On September 19, 2007, Defendant Rose notified Plaintiff the request was denied because removal of the cyst was considered an elective cosmetic procedure. (Id., p. 8.) On May 20, 2008, Plaintiff again complained that the cyst had reappeared. (Id., p. 9.) Defendant Rose examined Plaintiff on May 29, 2008, noting that Plaintiff denied having any pain but requested the removal of the cyst. (Id., pp. 9 - 10.) Defendant Rose determined that Plaintiff had a history of epidermal cyst and it would be monitored. (Id.) Plaintiff was incarcerated at another facility from July 10, 2008, to November 7, 2008. (Document No. 20-1, p. 7 and Document No. 20-2, pp. 1 - 4.) On November 21, 2008, Plaintiff requested the removal of the cyst because it "drains and sometime hurts." (Document No. 20-2, p. 18.) Defendant Rose examined Plaintiff noting that the cyst was mobile, nontender, and no drainage. (Id., p. 19.) Defendant Rose instructed Plaintiff to follow-up at sick-call as needed. (Id.) On December 4, 2008, Plaintiff was evaluated by Dr. McLain who requested consultation with a general surgeon. (Document No. 20-2, pp. 28 - 29 and Document No. 30-1, pp. 92 - 93.) The URC approved Dr. McLain's request on December 9, 2008, and Plaintiff was evaluated by Dr. Whyte on January 22, 2009. (Document No. 20-1, pp. 66, 70 - 72.) Dr. Whyte recommended the removal of the benign cyst. (Id., pp. 70- 72.) On May 6, 2009, Plaintiff reported to sick-call inquiring as to when the cyst would be removed and Dr. Edwards prepared a Consultation Request concerning the excision of the cyst. (Document No. 30-1, pp. 87 - 88.) On June 30, 2009, the URC approved the request for the removal of the cyst and Dr. Whyte excised the cyst on July 29, 2009. (Document No. 20-1, pp. 59 - 65.)

The Court finds that Defendant Rose did not act with deliberate indifference in providing medical treatment regarding the cyst on Plaintiff's neck. Following the return of the cyst on August 3, 2007, Defendant Rose provided continuous treatment, which included prescribing antibiotics and requesting approval for the removal of the cyst. After Defendant Rose notified Plaintiff that his request for the removal of the cyst had been denied by the URC, Plaintiff did not report to sick-call concerning the cyst for approximately eight months. Although Plaintiff again requested the removal of the cyst on May 29, 2008, Defendant Rose determined that the cyst would be monitored as Plaintiff denied any pain. Plaintiff was subsequently transferred to another facility and did not return to FCI Beckley until November 7, 2008. Approximately two weeks after his return to FCI Beckley, Plaintiff again requested the removal of the cyst but Defendant Rose instructed Plaintiff to follow-up as needed because there was no drainage and the area was nontender. Approximately a month later, Dr. McLain sought approval for a consolation with a general surgeon. The URC approved the request and within six weeks Plaintiff was evaluated by Dr. Whyte, who recommended the removal of the cyst. Although it appears that medical staff failed to schedule the procedure for approximately five months after receiving Dr. Whyte's recommendation, there is no evidence that medical staff acted with deliberate indifference. When Plaintiff reported to sick-call inquiring about the procedure, Dr. Edwards promptly prepared a Consultation Request regarding the removal of the cyst and the cyst was removed by Dr. Whyte within a month. There is no evidence that Defendant Rose knowingly disregarded the need to request approval and schedule the removal of the cyst. At most, it appears that any delay in scheduling the procedure was the result of negligence on the part of the medical department. See Webb v. Hamidullah, 281 Fed.Appx. 159, 166 (4th Cir. 2008)("negligent medical diagnoses or treatment, without more, do not constitute deliberate indifference"); Miltier

v. Beorn, 896 F.2d 848, 851 - 852 (4th Cir. 1990)("mere negligence or malpractice does not violate

the Eighth Amendment"); Sosebee v. Murphy, 797 F.2d 179, 181 (4th Cir. 1986)("[A] complaint that

a physician has been negligent in diagnosing or treating a medical condition does not state a valid

claim of medical mistreatment under the Eighth Amendment."). Further, there is no indication that

Dr. Whyte recommended the cyst be removed within a particular time period or that a delay in

removing the cyst resulted in complications or disfigurement.[6] The Court notes an inmate is not

entitled to the best possible care, only reasonable care. Geoff v. Bechtold, 632 F.Supp. 697, 698

(S.D.W.Va. 1986). Plaintiff appears to simply disagree with the appropriate course of treatment. An

inmate's disagreement with his medical care or the course of treatment for an objectively serious

medical injury generally will not constitute a sufficient basis for a constitutional claim. Wright v.

Collins, 766 F.2d 841, 849 (4th Cir. 1985). Based on the foregoing, there is no indication that

Defendant Rose knew of and disregarded an excessive risk to Plaintiff's health or safety. The

undersigned, therefore, finds that Defendant Rose's Motion to Dismiss, or in the Alternative Motion

for Summary Judgment, should be granted because there is no evidence that he violated Plaintiff's

Eighth Amendment rights by acting with deliberate indifference to Plaintiff's medical needs.

   *(ii)*   ***Defendant Thompson:***

       Defendant Thompson contends he is entitled to summary judgment because Plaintiff's claims

against him are improperly raised under the doctrine of *respondeat superior*. (Document No. 19-2,

---

   [6] Although Plaintiff often reported that the cyst caused him pain, the record does not support
a finding that Plaintiff was in continuous severe pain. The medical records reveal that Plaintiff never
reported that his pain exceeded 6 on a scale to 10. Specifically, Plaintiff rated his pain as a 4 to 5 on
February 8, 2007, and August 3, 2007. On August 23, 2007, Plaintiff rated his pain as a 2 to 3. On
September 4, 2007, Plaintiff rated his pain as a 6. Plaintiff denied having any pain on May 29, 2008.
On November 21, 2008, Plaintiff rated his pain as a 5 to 6.

pp. 20 - 21.) Defendant Thompson argues that "Plaintiff does not allege any specific personal involvement by Defendant Thompson. His only statement regarding Defendant Thompson is his claim that he delayed the surgical removal of the cyst, ignoring the recommendation of an outside physician." (Id., p. 21.) Defendant Thompson declares that in his position as Health Service Administrator ["HSA"], "my duties include managing and directing the administrative activities of a multi-disciplinary team of health care professionals who are responsible for the medical, dental and allied health services of the facility, and in collaboration with Clinical Director, overseeing the provision of the best possible patient care to the inmate population." (Document No. 20-2, p. 35.) Specifically, Defendant Thompson states as follows in his Declaration:

> 4.      I have not medically treated inmate Smith-Bey.
>
> 5.      I am a member of the Utilization Review Committee.
>
> 6.      I attend URC meetings as a member of the utilization review process as outlined in Program Statement 6031.01 Patient Care. However, the committee is chaired by the Clinical Director and he/she is the final authority for all URC decisions.

(Id.) Thus, Defendant Thompson asserts that his "role as the HSA is clearly not sufficient to establish personal involvement." (Document No. 19-2, p. 21.)

In Response, Plaintiff asserts that Defendant Thompson "knowingly and deliberately delayed medical treatment of surgery to remove the infectious painful abscess from the back of [Plaintiff's] neck by ignoring outside physician's recommendation for surgical removal of such abscess." (Document No. 30, p. 5.) Plaintiff asserts that as "administrator of the prison hospital, Mr. Thompson bears responsibility for insuring that prison inmates receive adequate medical care." (Id., p. 6.) Plaintiff explains that Defendant "Thompson failed to follow up on Dr. Whyte's recommendation because a total of six months passed and the plaintiff did not receive the scheduled

surgery as indicated by the Regional Director's written response dated February 17, 2009." (Id.) Plaintiff asserts that as "administrator of the prison hospital, Mr. Thompson bears responsibility for insuring that prison inmates receive adequate medical care." (Id.)

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. * * * Because vicarious liability is inapplicable to Bivens . . ., a plaintiff must plead that each Government-official defendant, through the officials own individual actions, has violated the Constitution." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1948, 173 L.Ed.2d 868 (2009); see also Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001), cert. denied, 537 U.S. 1045 , 123 S.Ct. 621, 154 L.Ed.2d 517 (2002)("In a Bivens suit there is no *respondeat superior* liability. * * * Instead, liability is personal, based upon each defendant's own constitutional violations." (Citation omitted.)). Liability can be premised, however, "on a recognition that supervisory indifference or 'tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984), cert. denied, 470 U.S. 1035, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985). A plaintiff must show "a pervasive and unreasonable risk of harm from some specified source and that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" Id. at 373. Evidence of a supervisor's continued inaction in the face of documented widespread abuses provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates. Id. A supervisor's mere knowledge of a subordinate's unconstitutional conduct is therefore not enough. Rather, Bivens liability may be imposed upon a supervisor only on the basis of purposeful "violations of his or her supervisory responsibilities." Ashcroft, ___ U.S. ___, 129 S.Ct. at 1949.

Essentially, Plaintiff alleges that Defendant Thompson violated his constitutional rights with respect to his failure to supervise employees. Plaintiff, however, has shown no personal involvement by Defendant Thompson and the record does not indicate any personal involvement by Defendant Thompson. Although Defendant Thompson acknowledges that he attends URC meetings and signs letters informing inmates of the outcome of the meetings, all medical decisions are made by the Clinical Directors. (Document No. 20-2, p. 35.) There is no evidence that Defendant Thompson intentionally ignored or condoned any unconstitutional conduct by his subordinates. Accordingly, Plaintiff's claim against Defendant Thompson under the doctrine of *respondeat superior* has no merit. The Court therefore finds that Defendant Thompson's Motion to Dismiss, or in the Alternative Motion for Summary Judgment, should be granted.

**E.     Qualified Immunity.**

Because it is evident that Defendants committed no violation of any firmly established constitutional right as Plaintiff has alleged, Defendants are entitled to qualified immunity.

**PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Document No. 20.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same to Plaintiff, who is acting *pro se*.

Date: August 17, 2011.

R. Clarke VanDervort
United States Magistrate Judge

25